IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

MUSTAFAH KALIL MUHAMMAD,

           Petitioner,

v.                                            Criminal No. 4:13-CR-072(3)

UNITED STATES OF AMERICA,

           Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Mustafah Kalil Muhammad's ("Petitioner") Renewed Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 333 ("Pet'r's Mot."). The Government opposed the Motion. ECF No. 343 ("Resp. Opp."). Petitioner replied. ECF No. 345 ("Pet'r's Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On November 12, 2013, a Grand Jury in the Eastern District of Virginia indicted Petitioner on two counts: Count Eighteen charged Petitioner with Interference with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; Count Nineteen charged Petitioner with Use of Firearm Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1) and (j) and 2. ECF No. 34. On April 14, 2014, Petitioner pled guilty to Count Nineteen. ECF Nos. 69, 70. On July 30, 2014, the Court sentenced Petitioner to 312 months imprisonment to be served concurrently to the sentence imposed in case 4:11-cr-89, U.S. District Court, Eastern District of Virginia, followed by 5 years of supervised release. ECF No. 189. On July 12, 2023, Petitioner filed a *pro*

1

*se* Motion for Compassionate Release, which the Court denied because Petitioner failed to exhaust administrative relief. ECF No. 331. Petitioner filed this Renewed Motion for Compassionate Release through counsel on January 31, 2024. The Government opposed, and Petitioner replied.

According to Petitioner's Presentence Investigation Report ("PSR"), the FBI's Safe Streets Peninsula Task Force began an investigation into members of the Thug Relations gang (the "Gang"). Present. Investig. Rep. ¶ 6, ECF No. 337 ("PSR"). The Gang engaged in acts of violence and narcotics distribution. *Id.* The Government compiled evidence of the Gang as an enterprise through testimony of cooperators and proof of Petitioner's membership from former members of the Gang. *Id.* A cooperator's testimony implicated Petitioner in the murder of Lloyd Robinson that occurred on January 8, 2010. *Id.* On September 19, 2012, Petitioner made statements to agents that implicated himself in the murder. *Id.*

Also, in the PSR, Petitioner did not report any physical issues but did report mental health issues, including post-traumatic disorder and personality disorder. *Id.* ¶¶ 47–50. Additionally, Petitioner did not report having substance abuse issues. *Id.* ¶¶ 51–57. The PSR assessed Petitioner with a total offense level of 40, a criminal history category of IV, and a recommended Guidelines sentence of 360 months to life on Count Nineteen. *Id.* ¶¶ 78–80.

Currently, Petitioner is incarcerated at Butner FMC with a projected release date of January 14, 2026.[1]

## II. LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted

---

[1] *See* Federal Bureau of Prisons, "Find an Inmate," BOP.GOV, https://www.bop.gov/inmateloc/ (last visited Apr. 2, 2024).

2

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary

and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" is defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. Yet after the First Step Act amended § 3582(c)(1)(A) to allow defendants to petition the district court directly without clearance from the BOP, U.S.S.G. § 1B1.13 became advisory and nonbinding on courts' application of § 3582(c)(1)(A) because § 1B1.13 was no longer an "applicable" Sentencing Commission policy statement. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Courts were thus "empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The most recent amendments to the Sentencing Guidelines went into effect on November 1, 2023, and U.S.S.G. § 1B1.13 now contemplates that a defendant may file a motion for compassionate release directly with the district court. *See* U.S.S.G. § 1B1.13(a) (2023). Therefore, § 1B1.13 is now an "applicable" policy statement under § 3582(c)(1)(A), and the Court must ensure that a sentence reduction granted under § 3582(c)(1)(A) is "consistent with" that Guideline. 18 U.S.C. § 3582(c)(1)(A); *see Brown*, --- F. Supp. 3d ---, 2023 WL 8653179, at *2 (D. Md. Dec. 13, 2023).

    Section 1B1.13(b) identifies five broad categories by which defendants may demonstrate extraordinary and compelling reasons to reduce a sentence: (b)(1) medical circumstances; (b)(2) the defendant's age; (b)(3) family circumstances; (b)(4) whether the defendant was a victim of abuse; and (b)(6) whether the defendant received an unusually long sentence. § 1B1.13(b)(1)–(4), (6). Section 1B1.13(b) also includes a catch-all provision allowing courts to find extraordinary and compelling circumstances when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together

with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." § 1B1.13(b)(5). This catch-all provision allows courts to continue to exercise discretion in considering "any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284; *see Brown*, 2023 WL 8653179, at *2 ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release."); *United States v. Gaither*, No. 5:19-00012-KDB-DSC-1, 2023 WL 7726622, at *2 (W.D.N.C. Nov. 15, 2023) ("The new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release."). Therefore, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, when evaluating whether extraordinary and compelling circumstances exist to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. Around August 30, 2023, Petitioner submitted a request for compassionate release to the Warden, which the Warden denied on September 20, 2023. Pet'r's Mot. at 7. Accordingly, more than 30 days have passed since Petitioner requested compassionate release. Thus, Petitioner meets the threshold requirement.

#### B. Petitioner's Compassionate Release Request

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. Petitioner argues that the conditions of confinement at his BOP facility warrant compassionate release given the lingering effects of COVID-19 and its impact on

Petitioner's health. Pet'r's Mot. at 7–8. Second, Petitioner argues that the recent amendments to the Sentencing Guidelines would have lowered his offense level in his 2011 case. *Id.* Lastly, Petitioner argues that his good record at the BOP, his cooperation in a Virginia murder case, and his release plan warrants compassionate release. *Id.*

First, Petitioner does not show a particularized susceptibility to serious health risks from COVID-19. The CDC lists various medical conditions that may increase an individual's chance of getting sick from COVID-19.[2] Here, Petitioner, age 37, asserts he suffers from obesity, high blood pressure, gastroesophageal reflux disease, lumbar disc disease, left ventricular hypertrophy, and a family history of sudden cardiac death, which makes him more likely to suffer severe illness from COVID-19. Pet'r's Mot. at 8. However, Petitioner's medical records indicate that he receives regular treatment for his medical needs. Gov't's Ex. 2. Also, Petitioner has not shown that the BOP cannot manage his medical needs. Moreover, the BOP offered Petitioner the Pfizer vaccine in March 2021 and December 2022, but he refused. Gov't's Ex. 2. Petitioner's refusal to take preventative measures to protect his health and his risk of contracting COVID-19 undermines his argument that extraordinary and compelling reasons exist to warrant his release. Thus, Petitioner has not established a particularized susceptibility to COVID-19 because of his medical needs that would constitute extraordinary and compelling circumstances.

Petitioner also does not show a particularized risk of contracting the disease at Butner FMC or that there would be less risk of contracting COVID-19 if released. As of April 2, 2024, there is only one open case for COVID-19 at Butner FMC.[3] *See United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk

---

[2] *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, (last updated May 11, 2023) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 2, 2024).
[3] *Inmate COVID-19 Data*, Federal Bureau of Prisons, BOP.GOV, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Apr. 2, 2024).

where there were only eight active cases of COVID-19 at the petitioner's facility); *see also United States v. Wilkins*, No. 7:17-cr-407-JMC-1, 2021 WL 194311, at *3 (D.S.C. Jan. 20, 2021) (finding no particularized risk where there were only ten active cases at the petitioner's facility). The low number of positive COVID-19 cases at Petitioner's facility indicates a low risk of contracting the virus at Butner FMC.

On the other hand, Petitioner proposes living with his partner in Newport News, Virginia, where he would be safer from contracting the virus. Pet'r's Mot. at 23. However, Newport News has an average of 11 new COVID-19 cases a day.[4] Even if the Court decided to release Petitioner to his partner's home, he could expose her and others to the dangers of COVID-19. *See United States v. Feiling*, 453 F. Supp. 3d 832, 842 (E.D. Va. 2020) ("[A]lthough Defendant argues that home confinement would allow him to better mitigate his exposure to COVID-19, the same can be said of keeping Defendant in prison, where the BOP has already taken steps to isolate prison facilities from internal and external sources of the coronavirus."). Although the Court recognizes and in no way minimizes the harsh realities incarcerated individuals have faced during the pandemic, Petitioner does not mention any potential harsher conditions of confinement that are unique to him for purposes of compassionate release. *See United States v. Ramirez*, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021) ("If challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction."). Accordingly, since the Court continues to exercise its discretion in releasing the most vulnerable inmates in light of the pandemic, the Court declines to release inmates who lack a significant showing of potential fatality from a COVID-19 diagnosis. Therefore, Petitioner is not entitled to

---

[4] *Tracking Coronavirus in Newport News, VA.: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com/interactive/2021/us/newport-news-virginia-covid-cases.html (last visited Apr. 2, 2024).

compassionate release because he has not shown a possible risk of contracting COVID-19 at his BOP facility or that he would be better protected if released.

Second, Petitioner argues that his sentence in his 2011 case to serve 210 months on a drug conspiracy charge did not account for the 2014 Guidelines amendment that would have reduced his Guideline Range under U.S.S.G. § 2D1.1. *See* No. 4:11-cr-89; Pet'r's Mot. at 18. Additionally, Petitioner's drug conspiracy charge did not account for the 2023 Guidelines amendment that would have reduced his criminal history category to III from IV under U.S.S.G. § 4A1.1. Pet'r's Mot. at 18–19. However, Petitioner's drug conspiracy charge has no bearing on the murder charge. Petitioner's drug conspiracy conviction occurred in a different, albeit related case. Petitioner would need to request a reduction in that case to benefit from the 2014 and 2023 Guidelines amendment.[5] This Court rendered a sentence in this case based on the facts before it and not decisions from another court. *United States v. Berrigan*, 437 F.2d 750, 752 (4th Cir. 1971) ("The sentence is a lawful one, and its imposition was based on lawful and entirely proper considerations.").

Lastly, the § 3553(a) factors do not support Petitioner's release. As an initial matter, the seriousness of Petitioner's underlying offense remains unchanged. Petitioner engaged in a home invasion robbery that led to the death of Lloyd Robinson. *See* PSR ¶ 6. Additionally, Petitioner and his fellow Thug Relations gang members were involved in a criminal enterprise distributing drugs to the community and committing home invasions. *Id.* At sentencing, Petitioner's criminal history category was at IV. *Id.* Petitioner presents a serious risk of recidivism since he committed this offense after serving a prison term involving firearm violations in the Virginia Department of Corrections. *Id.* ¶ 20.

---

[5] It is the Court's understanding that Petitioner completed his sentence in the 2011 case. *See Mustaffah Muhammad v. United States*, No. 4:11-cr-89-16, ECF No. 1589 (E.D. Va. Sept. 27, 2023).

8

Although the Court recognizes Petitioner's challenging upbringing and commends the Petitioner for participating in various vocational and rehabilitative courses, maintaining a clear disciplinary record, as well as his involvement with Butner FMC's BRAVE Program, these efforts are not extraordinary and compelling to earn a sentence reduction. Pet'r's Mot. at 16–18; see U.S.S.G. § 1B1.13(d) (stating "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."); *Woolridge*, 2021 WL 415131, at *7 ("defendant's rehabilitation alone proves insufficient to warrant a sentence reduction."); *United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison."). Petitioner is expected to follow the rules and improve himself while in prison. *United States v. Logan*, 532 F. Supp. 3d 725, 735 (D. Minn. 2021). Additionally, Petitioner's cooperation with state prosecutors is insufficient to warrant compassionate release.

Further, Petitioner's release plan does not adequately protect the public from the potential of a subsequent offense. If released, Petitioner plans to live with his partner in Newport News. Pet'r's Mot. at 23–25. Petitioner notes he plans to form an organization that works with at-risk youth and find employment using the transferable skills he developed at his BOP facility. *Id.* However, Petitioner does not explain or elaborate how his release plan would provide a viable alternative to serving the remainder of his sentence. Despite commendable evidence of Petitioner's rehabilitation, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor, and his release would not promote respect for the law or provide adequate deterrence. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release is **DENIED.** ECF Nos. 333, 335.

The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
June 25, 2024

Raymond A. Jackson
United States District Judge